AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
U.S. District Court
District of Kansas

# UNITED STATES DISTRICT COURT

### for the

### District of Kansas

AUG 28 2020

Clerk, U.S. District Court
By _____ Deputy Clerk

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| the premises and devices located at 1331 WEST 50th STREET SOUTH, WICHITA, KS as further described in Attachment A | ) ) ) ) |

Case No. 20 - M - 6118 - 01 - KGG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ District of _____ Kansas _____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

❏ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

❏ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2252/2252A | Transportation, Distribution, Receipt, Possession of Child Pornography |

The application is based on these facts:

See Attached Affidavit of Probable Cause.

☑ Continued on the attached sheet.

❏ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Ian D. Ensley, Special Agent, FBI
*Printed name and title*

telephonically

Sworn to before me and signed in my presence.

Date: 8/28/2020

*Judge's signature*

City and state:  Wichita, KS

The Honorable Kenneth G. Gale, US Magistrate Judge
*Printed name and title*



# UNITED STATES DISTRICT COURT

for the

District of Kansas

IN THE MATTER OF THE SEARCH OF:
THE RESIDENCE AND DEVICES AT
1331 WEST 50th STREET SOUTH
WICHITA, KS 67217
as further described in Attachment A

Case No. 20-M-6118-01-KGG

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A SEARCH WARRANT

I, Ian D. Ensley, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a warrant to search the

PREMISES known as **1331 W 50th ST S, WICHITA, KS, 67217,** hereinafter "RESIDENCE,"

further described in Attachment A, for the things described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation, and have been

since January, 2019.  As a Special Agent of the FBI, I am authorized to investigate violations of

laws of the United States, and I am a law enforcement officer with authority to execute arrest and

search warrants under the authority of the United States, including violations of Title 18, United

States Code § § 2252 and 2252A. I have participated in a wide variety of criminal investigations,

to include violent crime, crimes against children, major theft, and other federal crimes. I have

participated in the preparation and execution of search warrants, including, but not limited to,

those involving the sexual exploitation of minors and certain activities relating to material

constituting or containing child pornography.

3.      This affidavit is intended to show only that there is sufficient probable cause for

the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

4.      In February, 2020, Kik submitted CyberTipline Report 64183506 to the National

Center for Missing and Exploited Children. The report was submitted concerning seven uploaded

files that appears to be apparent child pornography used in Kik Messenger . Kik provided the

following information regarding the account:

> Email Address: earlhouse1331@gmail.com
> Screen/User Name: pearlsludge83
> ESP User ID: pearlsludge83_oyw
> IP Address: 107.77.172.133

5.      Detective James R Pearman, Wichita Police Department #2111, reviewed the

videos and image provided by Kik Messenger, upon confirmation that a Kik Messenger staff

member had also reviewed the image prior to their submission to NCMEC, which included:

    a.   Filename:  30d0f491-b772-4cc6-83b8-962a0425fcf7.mp4

        i.   Description: A female believed to be under the age of 14, laying on her
back.  A nude adult male is straddled over her placing his penis on her lips
while he masturbates and she performs oral sex.  The video is
approximately 16 seconds in length.

        ii.  According to Cyber Tip # 64183506, the video was uploaded to Kik
Messenger on 02-06-2020 at 18:57:28 UTC from IP 107.77.172.133.

    b.   Filename:  e7b45df1-1737-41f8-86c8-7026b38c95f2.mp4

        i.   Description: A female believed to be under the age of 14, sitting on a bed.
The female then uses a pink toothbrush to rub the outside of her vagina

2

and anus.  The female also uses the handle of the toothbrush to penetrate her anus.  The video is approximately 1 minute and 54 seconds in length.

    ii.  According to Cyber Tip # 64183506, the video was uploaded to Kik Messenger on 02-05-2020 at 06:05:49 UTC from IP 107.77.172.69.

c.  Filename:  7e9a10b9-3dce-40a4-834b-ccfdf14fdc7c.mp4

    i.  Description: A female believed to be under the age of 10.  The female performs oral sex on an adult male.  The video is approximately 1 minute and 23 seconds in length.

    ii.  According to Cyber Tip # 64183506, the video was uploaded to Kik Messenger on 02-05-2020 at 06:04:40 UTC from IP 107.77.172.69.

d.  Filename:  bcb95b3a-4e0c-4eba-92b5-4d6231e38744.mp4

    i.  Description: A female believed to be under the age of 10 wearing pink and white striped underwear with a shirt depicting a Disney type character. The female is laying on her back with the underwear pulled to the side and an adult male having vaginal sex with her.  The video is approximately 16 seconds in length.

    ii.  According to Cyber Tip # 64183506, the video was uploaded to Kik Messenger on 02-05-2020 at 06:12:09 UTC from IP 107.77.172.69.

e.  Filename:  22325e10-7c9c-4feb-99ce-31c1df0f02c8.mp4

    i.  Description: A female believed to be under the age of 16 totally nude. The female poses in different positions showing her vagina and breasts. The camera zooms in on her vagina on 2 separate occasions.  The video is approximately 58 seconds in length.

    ii.  According to Cyber Tip # 64183506, the video was uploaded to Kik Messenger on 02-05-2020 at 06:12:35 UTC from IP 107.77.172.69.

f.  Filename:  8b76fbd3-0585-4878-a77e-67f4d14f9b19.mp4

    i.  Description: A female believed to be under the age of 16.  The female is fully clothed and performing oral sex on an adult male.  The video is approximately 20 seconds in length.

    ii.  According to Cyber Tip # 64183506, the video was uploaded to Kik
Messenger on 02-05-2020 at 05:49:29 UTC from IP 107.77.172.69.

  g.  Filename:  18bf4379-5cb1-4cb1-b3da-2fe58a22a4d7.jpg

    i.  Description: A photograph depicting a female believed to be under the age
of 10, fully nude, on her hands and knees exposing her vagina.

    ii.  According to Cyber Tip # 64183506, the video was uploaded to Kik
Messenger 02-05-2020 at 06:00:34 UTC from IP 107.77.172.69.

6.    On March 27, 2020, the FBI subpoenaed Google for subscriber information about

earlhouse1331@gmail.com. On March 27, 2020, Google provided the following information:

    Google Account ID: 627512798717
    Name: Patrick Earl
    E-Mail: earlhouse1331@gmail.com
    Recovery SMS: 316-214-0607

7.    On April 2, 2020, the FBI served a subpoena to AT&T Compliance seeking

information regarding telephone number 316-214-0607. On April 2, 2020 AT&T responded with

the following information:

    Name: Patrick Earl
    User Address: 1331 W. 50th Street S, Wichita, KS, 67217
    Service Start Date: 10/21/2018

(The above address is the target RESIDENCE, described in Attachment A.)

8.    In April 2020, an Online Covert Employee (OCE) with the Federal Bureau of

Investigation (FBI) initiated a proactive undercover investigation utilizing Kik. The OCE entered

numerous public groups that reflected an apparent interest in child sex abuse materials. For

example, in one such group (Group 1), members of the group shared multiple images and videos

4

of child sex abuse material. As a member of Group 1, identified as username: btmstrpat, was a user with access to the images shared as part of the group and also shared images to the group, as outline below.

9.      In May, 2020, User btmstrpat shared two videos of child sex abuse material with through Group 1, while the OCE was present. One video appears to depict a nude prepubescent female approximately 6 to 9 years of age appearing to masturbate into the camera. The second video appears to depict a pubescent female approximately 14 to 16 years of age wearing a white tank top and blue jeans. The female then takes off her blue jeans and appears to masturbate in front of the camera.

10.      On May 28, 2020, the FBI served a subpoena to Kik Interactive Inc., Law Enforcement Operations, 420 Weber Street North, Suite 1, Waterloo, Ontario, Canada, requesting subscriber information for Kik Username: btmstrpat. On June 25, 2020, Kik provided the following information:

> Name: Rick Hearl
> Last Name: pearlsludge83@gmail.com
> Ip Address: 104.178.118.144

11.      Notably, the "pearlsludge83" nomenclature in the Gmail account is the same screenname as reported in CyberTipline Report 64183506, suggesting connection between the two.

12.      On June 30, 2020, the FBI served a subpoena to AT&T, Global Legal Demands Center, 11760 Highway 1, Suite 600, North Palm Beach, FL, requesting subscriber information

for IP address: 104.178.118.144. On July 2, 2020, AT&T responded with the following information:

> Name: Patrick Earl
> Address: 1331 W 50th ST S, Wichita, KS, 67217
> Email: btmstrpat@gmail.com
> Telephone Number: 316-871-2660

13.     Open source checks reveal Patrick Wayne Earl resides at 1331 W 50th ST S, Wichita, KS, 67217. Property ownership records for RESIDENCE indicate an owner of PATRICK EARL, purchased in April, 2013.

14.     On August 14, 2020, the author accessed the Sedgwick County Property and Tax records for 1331 W 50th ST South, Wichita, Kansas, 67217 and confirmed the property owner was listed as PATRICK EARL.

15.     On August 14, 2020, a physical surveillance of the RESIDENCE identified a White in color Ford Crown Victoria bearing Kansas license plate 672 MRS, the vehicle is registered to PATRICK WAYNE EARL.

16.     On August 19, 2020, physical surveillance of the RESIDENCE identified a gold in color GMC Sonoma with a truck bed cover, bearing Kansas License plate 633 MCA, the vehicle is registered to PATRICK WAYNE EARL. The vehicle was also observed on August 18, 2020 at EARL's place of employment.

17.     During physical surveillance of the residence a fixed security camera was present above the east window of the home. The camera was pointed in the direction of the detached garage indicating there may be items of value stored within the detached garage.

6

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

18.     From my training and experience, I know that individuals who are interested in the sexual exploitation of children will frequently use child pornography to satiate their prurient sexual desires. I know that these individuals will frequently use or access their child pornography in private, either in their own home or within secure areas of a home, including workshops, garages. If privacy is not able to be accomplished at the residence, these individuals may seek a secluded place in their car to access their child pornography – this is made easier by the use of mobile devices and the proliferation of free or unsecured wi-fi.[1] While evidence of child pornography activities is often found on devices within the residential area of such individual's home, it would not be uncommon to find evidence of those same activities within the individual's car or garage/workshop.[2]

19.     From my training and experience, I also know that individuals who are interested in the sexual exploitation of children will often seek out other likeminded individuals, for the purposes of normalizing their interest, discussing historical or planned child sexual abuse, and/or advertising the trade of child pornography.

---

[1] This activity is commonly referred to as "wardriving." Online definitions of this activity are available at https://en.wikipedia.org/wiki/Wardriving and https://www.mcafee.com/blogs/consumer/identity-protection/wardriving/.

[2] *See, e.g., United States v. Marshall Seitter*, District of Kansas (Wichita) case 6:17-CR-10041-JTM (where child pornography was found on a harddrive in defendant's car and device from his workspace); *United States v. Michael Paul Murphy*, District of Kansas (Wichita) case 6:19-CR-10041-JWB (where child pornography was found in defendant's truck).

20.     From my training and experience, I know that individuals who are interested in the sexual exploitation of children will frequently utilize digital devices to access the internet to seek, obtain, and traffic in child pornography, and that the device(s) used by such individuals will retain evidence and artifacts of such activity. I also know that individuals who are interested in the sexual exploitation of children will protect and retain child pornography for long periods of time.[3] Typically, the individual will keep the device(s) close-by, in part for immediate access for sexual gratification and to maintain secure control over the contraband material.

21.     From my training and experience, I know that individuals who engage in communications with other individuals relating to the sexual exploitation of children will frequently retain information about these contacts, which can be used later to obtain access to other groups or forums relating to child pornography, or for exchanging additional child pornography.

22.     Because both of the accounts involved in the uploading or transmission of child pornography are associated with the target address, I believe the user of the accounts is likely the

---

[3] *See United States v. Shields*, 458 F.3d 269, 279 (3d Cir. 2006) (noting nine month delay in applying for search warrant would not have supported staleness challenge due to context of child pornography offender behavior along with evidence of continuing offenses); *United States v. Schesso*, 730 F.3d 1040 (9th Cir. 2013) (finding delay of 20 months did not render probable cause stale in context of investigation); *see also United States v. Allen*, 625 F.3d 830, 842-43 (5th Cir.2010) (holding that an 18-month delay between when defendant sent child pornography images through a peer-to-peer networking site and issuance of a search warrant did not render the information stale); *United States v. Morales-Aldahondo*, 524 F.3d 115, 117-19 (1st Cir.2008) ( concluding that the passage of over three years since the acquisition of information that defendant's brother, who shared defendant's residence, had purchased access to various child pornography websites, did not render that information stale).

same individuals and is located at the target address. Further, I believe that the user evinces the qualities associated with child pornographers, outlined above. In this instance, to post the child pornography observed by Law Enforcement over the Kik Application, the user had to first seek out the child pornography and exert control over it. The above facts also indicate that the user of Kik at the target address has created more than one Kik account to distribute child pornography via the social media network. Because of the user's operation of multiple social media accounts to distribute previously obtained child pornography, I believe the user evinces characteristics common to child pornographers, including retaining child pornography for long periods and on multiple devices. I expect the device(s) used by operator of the accounts described above have previously (and will probably still contain, as discussed below) additional child pornography, links to child pornography websites, or artifacts showing access to child pornography. I further expect the device(s) used by or in the possession of the user will probably contain evidence of communications, or attempts to communicate, with other individuals interested in the sexual exploitation of children, i.e., child pornographers.

## TECHNICAL TERMS

23.     Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.  IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service

providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c. Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

24.     As described above and in Attachment B, this application seeks permission to search for records that might be found on the RESIDENCE, as described in Attachment A, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

25.     *Probable cause*. I submit that if a computer or storage medium is found on the RESIDENCE, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file

10

on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

26.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the RESIDENCE because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the

11

storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.  As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant

12

insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

27.    *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a RESIDENCE for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the RESIDENCE, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded

13

on the storage media, and to prevent the loss of the data either from accidental or intentional

destruction.  This is true because of the following:

    a.  The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on RESIDENCE could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.  Storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

    b.  Technical requirements.  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the RESIDENCE.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

    c.  Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

    28.    *Nature of examination.*  Based on the foregoing, and consistent with Rule

41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying

storage media that reasonably appear to contain some or all of the evidence described in the

warrant, and would authorize a later review of the media or information consistent with the

warrant.  The later review may require techniques, including but not limited to computer-assisted

14

scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

29.     Because several people share the RESIDENCE as a residence, it is possible that the RESIDENCE will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## REQUEST FOR SEALING

30.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time.  Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

15

## **CONCLUSION**

31.     I submit that this affidavit supports probable cause to believe that the

RESIDENCE located at 1331 W 50th ST S, Wichita, KS and described in Attachment A does

contain evidence of violations of 18 U.S.C. § 2252 and 2252A and therefore respectfully request

that this Court issue a search warrant for the search of the premises and devices located at 1331

W 50th ST S, Wichita, Kansas, being more specifically described in Attachment A which

incorporated by reference as if fully set forth herein, authorizing the seizure and search of the

items described in Attachment B herein.

Respectfully submitted,

IAN D. ENSLEY
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on ___telephonically___ 8/28 _____, 2020.

KENNETH G. GALE
UNITED STATES MAGISTRATE JUDGE

16

**ATTACHMENT A**

*Property to be searched*

The property to be searched is **1331 W 50th ST S, WICHITA, KS, 67217**, further

described as follows:

A single story 3 bedroom, 1 bathroom ranch style residence with approximately 1400 square feet. The home is white in color with a grey roof. The home contains a covered front entryway. The home has three windows on the south side of the home. A two car detached garage approximately 24 feet by 20 feet is constructed to the east of the home, the garage is similarly sided. A chain link fence connects the house and garage. Recent photographs of the residence are attached.



This warrant also authorizes the search of a white in color Ford Crown Victoria bearing Kansas license plate 672 MRS, registered to PATRICK WAYNE EARL, and a gold in color GMC Sonoma with a truck bed cover, bearing Kansas License plate 633 MCA, registered to PATRICK WAYNE EARL, located at the RESIDENCE.

**ATTACHMENT B**

*Property to be seized*

1.      Any and all child pornography (as defined in 18 U.S.C. § 2256(8)), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2), in any format or medium, including computer files, prints, negatives, drawings, and paintings.

2.      Any and all child erotica, in any format or medium, including documents, writings, and images or videos of children that do not qualify as child pornography but evince a sexual interest in children.

3.      Any and all computer devices (including desktops, laptops, tablets, smartphones, as well as the hardware, peripherals, software, computer related documentation, passwords and data security devices, and storage devices), including the software or programs or applications contained therein, that may be or are used to:

      a.   distribute, receive, possess or access child pornography or visual depictions of minors engaged in sexually explicit conduct;

      b.   seek, obtain, store, or record information pertaining to the sexual exploitation of children or otherwise relate to an interest in child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children;

      c.   communicate with any other person regarding child pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or the sexual exploitation of children; and any and all data or information on the device

which may relate to subparagraphs 3a, 3b, and 3c, including data or information

that may reveal indicia of ownership, access, or use.

4.     Any and all notes, documents, records, correspondence, in any format and

medium (including, but not limited to, envelopes, letters, papers, diaries, manifestos, manuals,

email messages, chat logs and electronic messages, and handwritten notes) pertaining to child

pornography, visual depictions of minors engaged in sexually explicit conduct, child erotica, or

the sexual exploitation of children, and to include any and all data or records that may reveal

indicia of creation, use, or ownership of the notes, documents, records, or correspondence.

5.     Any and all cameras, film, videotapes or other photographic equipment, which

may be used to contain, create or duplicate child pornography, visual depictions of minors

engaged in sexually explicit conduct, or child erotica.

6.     Any and all documents, records, or correspondence, in any format or medium

(including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic

messages, and other digital data files), pertaining to occupancy or ownership of the RESIDENCE

described above, including, but not limited to, rental or lease agreements, mortgage documents,

rental or lease payments, utility and telephone bills, mail envelopes, or addressed

correspondence.

7.     Any and all records, documents, invoices and materials, in any format or medium

(including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic

messages, and other digital data files) that concern any accounts with an Internet Service

Provider.

2

8.      Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

9.      Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files) that concern encryption, deletion, or destruction of evidence.

10.      Any and all visual depictions of minors that may assist in the identification of minors depicted in images of child erotica or child pornography.